UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT RADSPIELER No. 20-cv-00777

Plaintiff, JUDGE JALA Y. JARBOU
JUDGE MAGISTRATE RAY KENT

Vs

CITY OF OTSEGO, MICHIGAN;
CITY OF OTSEGO POLICE DEPARTMENT,
BRANDON WEBER, individually and in his official capacity, and, GORDON KONKLE, individually and in his official capacity,

Defendants.
__________________________________/

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND**

STATEMENT OF FACTS

In his initial Complaint, Plaintiff Albert Radspieler claimed, in part, that on August 19, 2017 Defendant Officer Brandon Weber illegally stopped and detained Radspieler for allegedly exceeding the speed limit on a segment of River Street in the City of Otsego. Weber claimed that Radspieler was travelling 44 miles per hour in a 25 mile per hour zone. But Radspieler claims that, although the 25 mile per hour limit was posted, that limit was invalid because none of the set speed limits in MCL 257.627 applied and, therefore, only the basic speed law applied to travel on that segment of road. Complaint, PageID.507.

To support his claim that he was obedient to the basic speed law, Radspielier pled that he was travelling lawfully when Weber stopped him. Radspieler pled that, when he saw Weber pull behind him, Radspieler knew Weber intended to stop him and, so, Radspieler stopped on his own accord. Therefore, Weber had no evidence that Radspieler was violating the basic speed law. Id.

In the Complaint, Radspieler also claimed that the City was liable for the illegal stop by Weber, because the City had exhibited deliberate indifference to similar illegal stops of other motorists which indifference allowed Weber to feel he could illegally stop Radspieler with impunity. Complaint, PageID. 18-21 (¶ 53, 57, 60) ; PageID. 23-28 (¶ 87, 89(b), 90-94.)

The Defendants filed an Answer to the Complaint denying the 25 mile per hour speed limit was invalid. Answer, PageID.80-81 But, neither by answer nor motion, did the Defendants specifically challenge the sufficiency of the claim that Radspieler complied with the basic speed.

On January 15, 2021, within the time allowed by the Case Management Order, Radspieler filed a Motion for Leave to File First Amended Complaint and Jury Demand. Motion PageID.161-164 ; Case Management Order, PageID.133 The proposed First Amended Complaint (FAC) contained the same allegations about the invalidity of the 25 mile per hour limit on River Street, the application of

the basic speed law, and Radspieler's compliance with the basic speed law. FAC, PageID.238-241

As one of the amendments sought in the FAC, Radspieler sought to elaborate on his *Monell* claim against the City for posting a speed limit sign that was illegitimate, for being deliberately indifferent to the unlawful nature of the posted limit, and for deliberately ignoring its obligation to create a traffic control order to legitimize the 25 mile per hour speed limit or remove the speed limit signs. First Amended Complaint (FAC), PageID.241-247, PageID.268-269 ; Brief in Support of Motion to Amend Complaint, PageID.173-179

In their response to the motion to amend complaint, the Defendants did not argue that Radspieler's proposed amended complaint contained insufficient factual allegations to show he had complied with the basic speed law. Response to Motion, PageID.336-340

But in deciding the motion to amend, the Court denied permission to elaborate on the factual basis for the *Monell* claim against the City related to the illegal stop of Radspieler. The sole reason the Court disallowed that amendment was that the FAC stated insufficient facts to support Radspieler's claim that he had complied with the basic speed law. Order 2/19/21, PageID.605; Opinion PageID.601-602

The Court permitted other amendments to the Complaint. Id. And Radspieler has filed a FAC in compliance with the Court's order. FAC, Page.ID 607-640

Now, Radspieler has cured the deficiency and, in his proposed Second Amended Complaint and Jury Demand (SAC, exhibit 1 attached) stated sufficient facts to support his compliance with the basic speed law. SAC, ¶ 14-46.

**STANDARD OF DECISION**

The policy of the federal rules is to freely allow amendments to the pleadings when justice so requires. Fed. R. Civ. P. 15(a)(1), (2). But a court may deny a motion to amend when motion is the product of undue delay, would cause prejudice to the opposing party, when the movant has failed to cure deficiencies with prior amendments, or when the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

This is the second amendment to the Complaint sought by the Plaintiff. The Case Management Order set a due date of January 15, 2021 for amendments to the pleadings. Case Management Order, PageID.133 (Radspieler has moved to extend the due date.) But permitting the Plaintiff to amend his complaint will not prejudice the Defendants. The claim that Radspieler complied with the basic speed law was contained in the original Complaint and is in the FAC. The Defendants have known of that claim for the beginning of the lawsuit and they have never

challenged the sufficiency of the allegations to support that claim. Since the Defendants have known that Radspieler claims compliance with the basic speed law (and, indeed, have a video recording of him driving before Weber stopped him) the amendment to include more facts supporting the claim will not change the scope of their discovery. And, even if it did change that scope, discovery is open until August 18, 2021 and the parties have not yet started to take depositions.

This motion is not the product of undue delay. Plaintiff's counsel believed that the allegations about Radspieler complying with the basic speed law were sufficient before. Counsel believed that the essence of the basic speed law was its common law precusor: the assured clear distance rule which creates a presumption of negligence if a driver crashed into the vehicle ahead. Counsel believed that since the Complaint and FAC stated that Radspieler voluntarily stopped after Weber swung around to follow him, Radspieler clearly did not violate the assured clear distance rule because he did not collide with any other vehicle.

Plaintiff's counsel was not aware that the Complaint or FAC was deficient. Evidently, defense counsel did not believe it was deficient either, because counsel did not challenge the complaint via a motion to dismiss and did not challenge the first motion to amend on the basis that the allegations about Radspieler complying with the basic speed law were deficient. This Court's order of February 19, 2021 gave Plaintiff the first notice that his Complaint and FAC were deficient in the

latter regard. And, Plaintiff has moved to cure the deficiency within 14 days after the Court's order. There is no undue delay in bringing this motion, intentional or otherwise.

This is Radspieler's first effort to cure the deficiency after he learned of it. There are no earlier unsuccessful efforts to amend that deficiency. And the SAC's claims that the City illegal posted the speed limit signs and Weber illegally stopped Radspieler and, are not futile.

"Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir.2005). But the proposed Second Amended Complaint will permit the claim of an illegal, unconstitutional stop to survive a motion to dismiss. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).

The amended claims are not futile.

ARGUMENT

I. THE SECOND AMENDED COMPLAINT STATES SUFFICIENT FACTS TO STATE A CLAIM THAT ONLY THE BASIC SPEED LAW APPLIED TO RADSPIELER.

The following allegations appear in paragraphs 13 through 38 of the proposed Second Amended Complaint and Jury Demand. Exhibit 1:

Michigan Codified Laws 257.627 and 257.628 (the versions in effect on August 19, 2017 when Weber stopped Radspieler) determined whether the 25-mile-per-hour speed limit posted on River Street was legal. Issuance of a civil infraction for speeding is authorized only if a driver violated a speed limit set by MCL 257.627 or a speed limit modified after a speed study as required by MCL 257.628. MCL 257.627(13), (16). Statutes, Ex. 2 and 3.

First, MCL 257.627(1) states the basic speed law:

> A person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. A violation of this subsection shall be known and may be referred to as a violation of the basic speed law or "VBSL".

MCL 257.627(1).

MCL 257.627(2) stated the *prima facie speed limits*, limits that applied unless the basic speed law required travel at a lower or higher speed limit.

MCL 257.627(2) (a-d) stated speeds that were lawful based upon the nature

of the area of the street. In residential subdivisions, public parks and in a business district, travelling 25 miles per hour was legal. In a mobile home park, going 15 miles per hour was legal. MCL 257.627 (2) (a-d). But the area on River Road where Weber stopped Radspieler was not within one of those types of areas. SAC, ¶30-38

Next, MCL 257.627(2) (e-i) set the speed that a driver may lawfully go based upon the number of vehicular assess points in the one-half mile segment of road upon which the person was driving. (A vehicular access point is an intersecting roadway or driveway.) Those statutory sub-sections permitted speeds from 25 miles per hour (in a segment with 60 or more vehicular access points within a half-mile segment) to 45 miles per hour (in a segment with at least 30 but less than 39 vehicular access points within a half-mile segment.) If a road segment fit one of the descriptions in MCL 257.627(2) (e-i) then a posted speed limit setting the speed allowable in one of the latter subsections was legal, provided the City Commission of Otsego passed a resolution setting the speed limit and a traffic control order was filed with the City Clerk setting the speed limit. MCL 257.627(12). SAC, ¶37.

But none of the lawful speed limits set by MCL 257.627(2) (e-i) applied to the one-half mile segment of River Street where Weber stopped Radspieler, because on August 19, 2017 that half-mile segment contained less than 30 vehicular access points. In fact, that segment contained 16 or fewer vehicular access points. SAC, ¶35.

And, even if the latter segment contained between 30 and 39 vehicular access points, the City had not filed a traffic control order with the City Clerk to legitimize the corresponding speed limit of 45 miles per hour set by MCL 257.627(i). Therefore, none of the prima facie speed limits applied to the segment. Only the basic speed limit applied to the segment. SAC, ¶36.

MCL 257.628(4), (5) [effective January 5, 2017] first allowed a city to modify speed limits. But those sections compelled the city 's road authority to meet the requirements of that section before determining any modified speed limits on local highways. To modify a speed limit on the segment of River Street, the City had to comply with MCL 257.628 (4), (5). Under those sections, for the City to set a 25 mile per hour speed limit for the segment, the such limit had to be determined by an engineering and safety study and measured by the eighty-fifth percentile speed of free-flowing traffic under ideal conditions of a section of highway rounded to the nearest multiple of 5 miles per hour. The City also had to file a traffic control order with the City Clerk. But City never conducted an engineering and safety study on the segment and never filed a traffic control order. Therefore, on August 19, 2017, no set speed limit, including the posted 25 mile per hour limit, applied to the road segment. Only the basic speed law applied. SAC, ¶37.

## II. THE SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES FACTS TO SHOW THAT RADSPIELER COMPLIED WITH THE BASIC SPEED LAW.

The facts below are stated in the SAC, paragraphs 13 through 25 and 38 through 46:

The basic speed law states:

> A person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. A violation of this subsection shall be known and may be referred to as a violation of the basic speed law or "VBSL".

MCL 257.627 (1).

The driver of a motor vehicle on a public highway has a common-law duty to operate the motor vehicle at a proper and reasonable rate of speed, with regard to the traffic and use of the highway in the existing conditions, and to avoid, as far as possible, endangering the life or limb of other persons and property. *Hollingshead v. Gunderman*, 256 Mich. 299, 239 N.W. 280 (1931). The basic speed law of MCL 257.627(1) incorporates that common law duty. *Odell v Powers*, 284 Mich 201, 205; 278 NW 819, 820 (1938).

The basic speed law provides that a person operating a vehicle on a highway must operate the vehicle at a careful and prudent speed not greater than nor less

than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition then existing. *Kolehmainen v EE Mills Trucking Co,* 301 Mich 340, 348; 3 NW2d 298, 301 (1942). Radspieler claims he was travelling at 38 miles per hour when Weber claimed he was going 44 miles per hour. SAC, ¶ 18-19, 41

Absent an applicable set speed limit, the rate of speed at which an automobile is operated is not alone determinative of whether it is being driven at a careful and prudent speed. What constitutes an excessive speed in such cases depends to a large extent on the condition of the highway and the surrounding circumstances. *Kolehmainen v EE Mills Trucking Co,* 301 Mich 340, 348; 3 NW2d 298, 301 (1942). But nothing about the condition of the highway or surrounding circumstances indicated Radspieler's speed was excessive or violative of the basic speed law.

The segment of River Street was paved asphalt, dry, and smooth. There were no potholes or other obstacles in the street. There was no construction work. There was no hospital. The weather was warm, sunny and clear. The visibility was totally clear without fog, smoke or other obstructions of a driver's view. Radspieler's vehicle was in perfect mechanical and operational condition. The vehicle's brakes were in perfect working order. SAC, ¶ 13-25, 43-45

Radspieler was in perfect physical and mental condition with no impairment of vision, hearing, awareness, or reaction time. His driver's license contained no

physical, mental, or visual restrictions. Id.

As Radspieler approached Weber's car, the roadway was clear of eastbound traffic. There were no vehicles traveling eastbound on River Street between Radspieler and Weber. There were no vehicles between Radspieler and the stop sign at Watson Road. Radspieler stopped at Watson Road in full control of his truck without the need for an emergency stop of any kind. Id.

The basic speed law is the statutory enactment of the common law assured clear distance rule of motoring conduct. *Patzer v Bowerman-Halifax Funeral Home*, 370 Mich 350, 352; 121 NW2d 843, 844 (1963). The assured clear distance rule creates a driver's duty to maintain a speed that will permit him to stop in the "assured clear distance ahead" and it applies "with equal force when a driver runs into an object whether it is moving or at rest and whether he is overtaking the object or the object is approaching toward him." *Winslow v. Veterans of Foreign Wars Nat'l Home*, 328 Mich. 488, 493; 44 N.W.2d 19 (1950); *Estate of Klapp by Masse v Bono*, unpublished opinion of the Court of Appeals, issued November, 19, 2020 (Docket No. 346818), 2020 WL 6814665, p *7, Ex. 4. Radspieler stopped at the stop sign without running into anyone or anything and without any risk of such collisions. SAC, ¶45. Thus, he did not violate the assured clear distance rule which the basic speed law embodies.

Finally, the statutory provisions for setting speed limits based upon number

of vehicular access points, supports Radspieler's compliance with the basic speed law. Theoretically, if the lawful speed limit of 45 miles per hour in MCL 257.627(i) applied because the segment theoretically contained between 30 and 39 vehicular access points and if the City had filed a traffic control order with the City Clerk, Radspieler would not have violated that speed limit by travelling at 44 miles per hour, as claimed by Weber. But the segment contained only 16 or fewer vehicular access points. Thus, extending the methodology of MCL 257.627(i), the lawful speed limit of the segment under the basic speed law would be over 45 miles per hour. And Radspieler was only going 38 miles per hour on the segment. SAC, ¶18-19, 41. Therefore, since there were no adverse conditions of the road, weather, or driver to mandate a different limit, Radspieler did not violate the basic speed law.

## III. THE FAC ADEQUATELY EXPANDS THE FACTS SUPPORTING THE CITY'S LIABILITY FOR THE ILLEGAL STOP.

A constitutional violation is attributable to a municipality if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs of the City of New York,* 436 U.S. 658, 690 (1978). Liability may also be based on a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels," *id*. at 691, if the "relevant practice is so widespread as to have the force of law," *Bd of the Co. Comm'rs of Bryan Co., Oklahoma v.*

*Brown*, 520 U.S. 397, 404 (1997). Furthermore, "[o]fficial municipal policy includes the decisions of a government's lawmakers [and] the acts of its policymaking officials," *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

A city is liable for the acts of its officials with policymaking authority. "*Monell* held that recovery from a municipality is limited to acts that are, properly speaking, "of the municipality," *i.e.*, acts that the municipality has officially sanctioned or ordered." *Pembaur v City of Cincinnati*, 475 US 469, 470 (1986).

Also, "a local government may be liable for the failure to take action if the failure evidences a deliberate indifference to the constitutional rights of its inhabitants. Deliberate indifference is required because it is only when the failure to act reflects a deliberate or conscious choice by the local government that the failure to act can be considered a governmental 'policy.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 (1989) (emphasis added) (failure to act is deliberate indifference if need to act is obvious and failure to act is likely to result in violation of constitutional rights).

Moreover, the failure to act will constitute deliberate indifference only if governmental policymakers were aware of the need to act or if the need to act was obvious. And the failure to act must be the actual cause of the constitutional violation. *Id.* at 109 (1989).

In the SAC, Radspieler expands upon his claim that the City is liable for the illegal stop of Radspieler. The City was the actual cause of the illegal stop of Radspieler for travelling over 25 mph, because the City's final policymakers, not just city employees, ordered or sanctioned the illegal posting of the 25 mile per hour speed limit. *Pembaur*, *supra*, 475 US at 470.

And then, the official policymakers were systematically and deliberately indifferent to the illegality: They failed to either remove the speed limit signs or take steps to legitimize the speed limit. SAC, 47-62.

The City Commission and City Manager were the chief policymakers regarding traffic control. The City Manager is the Commission of Streets. City Charter, Chpt. II, Sec. 10, (Excerpts, Ex. 5); AC R 28.1125. The City Commission, as the body with power to create ordinances, has the duty to create traffic control orders and transmit them to the City Clerk for filing. Michigan Administrative Code (AC) R 28.1153, 1154; SAC, ¶ 49.

In 2003, 14 years before the stop of Radspieler, the City Commission adopted the Uniform Vehicle Code, including MCL 257.627 and MCL 257.628. That code provided that no set speed limit in MCL 257.627(2) applied to River Street. Yet, many years before 2003, the City Manager posted the illegal 25 mile per hour limit on River Street and he maintained it even after the Vehicle Code was adopted. City Code, Chpt 74, Art. 1I; SAC, ¶50.

In 2002, the City adopted the Uniform Traffic Code. That code stated, "The authority … to regulate traffic shall be exercised by the traffic engineer by the issuance of traffic-control orders that shall specify the rules and regulations adopted or established by him or her." That code also required that the traffic engineer issue to traffic control orders and the City Commission to approve them for filing with the City Clerk. City Code (excerpts, Ex. 6), Chpt 74, Art. 1, Sec 1; Traffic Code, AC R 28.1153; SAC, ¶ 51.

Either the City manager, as the street administrator, or, the chief of police, as the default traffic engineer, were responsible for enforcing the Vehicle Code and the Traffic Code. City Code, Chpt. 2, Sec. 10.; AC R 28.1125(1). Yet, neither of those officials removed the speed limit signs on River Street or acted to legitimize the speed limit. SAC, ¶ 52.

Also, the Mayor was the final policymaker for to ensuring the enforcement of city ordinances. City Charter, Chpt II, Sec. 8, 10, 11. SAC, ¶ 66-67. Yet, the Mayor acted neither to remove the speed limit signs on River Street nor to legitimize the speed limit. SAC, ¶ 53.

Effective January 5, 2017, the Uniform Vehicle Code first allowed a city to modify speed limits. But to legally create a set speed limit on River Street, the City Commission had to conduct an engineering study to set the speed limit and

create and file a traffic control order to legitimize it. MCL 257.628(4), (5) [effective January 5, 2017] But the Commission did neither. SAC, ¶ 54.

"[T]he Legislature is charged with knowledge of existing laws…" *State Treasurer v Schuster*, 215 Mich App 347, 351; 547 NW2d 332, 334 (1996), *rev'd on other grounds* 456 Mich 408; 572 NW2d 628 (1998). And being city residents, the City Commissioners regularly travelled on River Street and were aware of speed limit signs there. Being charged with knowledge of the law and the facts, the City Commission had actual or constructive notice that the speed limit signs posted on River Street were not valid. *Canton, supra,* 489 U.S. at 396. But the City Commissioners deliberately failed to remove the signs or legitimize the speed limit. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 396 (1989); SAC, ¶ 55.

In the location where Weber stopped Radspieler, the street was a "speed trap." Defendant Konkle was the street administrator and traffic engineer for years before 2017. And as traffic engineer, he had to ensure speed limits were lawful. Yet, Police Chief Konkle directed or permitted officers to issue speeding tickets on River Street even though Konkle knew the posted limit was invalid. SAC, ¶ 56.

A municipal custom can be a practice of lengthy duration that is the local government's "standard operating procedure." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 109 (1989). The City allowed an invalid speed limit to remain posted for 15 years and that became its standard operating procedure.

The City officials knew or should have known that their failure to act was likely to result in the violation of constitutional rights, to wit: the police stop and detention of a driver without probable cause and without due process, in violation of the 4th, 5th and 14th Amendments to the United States Constitution. SAC, ¶ 58.

The City's practice and policy to ignore the illegal posted speed limit is the actual cause of the unconstitutional stop and detention of Radspieler. Because the City illegally posted the speed limit and systematically failed to legitimize the speed limit, Officer Weber stopped Radspieler for speeding without probable cause. *Canton*, 489 U.S. at 109. SAC,¶ 50 .

Radspieler's case is like *Buffkins v. City of Omaha, Douglas County, Neb.*, 922 F.2d 465 (8th Cir. 1990). There the city council had failed to repeal a disorderly conduct ordinance that the Nebraska Supreme Court had called "constitutionally suspect" (and had not ruled unconstitutional only because of a standing issue) two years before Buffkins' arrest for disorderly conduct.[1] Buffkins sued for unlawful arrest under 42 USC 1983. The Eighth Circuit ruled: "As a result of the City's failure to repeal subsection (c), Officers Friend and Grigsby relied on the unconstitutional portion of the disorderly conduct ordinance to arrest Buffkins. We therefore hold the City of Omaha was improperly dismissed

[1] Two years after the arrest the Nebraska federal district court ruled the ordinance unconstitutional.

as a party defendant in this lawsuit." 922 F2d 471-472. Just two years of failure to act constituted deliberate indifference. Id. Here, there was 15 years of inaction.

Based upon the above, the SAC states a claim for Monell liability against the City for the illegal stop and detention of Radspieler.

CONCLUSION

For the above reasons, Radspieler asks this Court for leave to file his Second Amended Complaint and Jury Demand.

Respectfully submitted,

By /s/ Robert L. Levi
Robert L. Levi
Robert L. Levi, P.C.
4125 Cumberland Court
Commerce Township, MI 48390
robert@robertlevilaw.com
248-366-4412
State of Michigan Bar No. 42598

Date: March 4, 2021